# LAW OFFICES OF SUSAN G. KELLMAN
25 EIGHTH AVENUE • BROOKLYN, NEW YORK 11217
(718) 783-8200 • FAX (718) 783-8226 • SGK@KELLMANESQ.COM
FELLOW, AMERICAN COLLEGE OF TRIAL LAWYERS

September 4, 2020

**BY ECF and EMAIL**
The Honorable Paul A. Engelmayer
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

    Re: *United States v. Randall et al.*, No. 19 Cr. 131 (PAE)
       Client: Carl Andrews

Dear Judge Engelmayer:

  Counsel appreciates that your Honor shares our concerns for Mr. Andrews' constitutional rights to a speedy trial and the effective assistance of counsel, as reflected in the Court's Order of September 3, 2020. I fear, however, there may be some confusion regarding an appropriate mechanism for giving Mr. Andrews the fair trial to which he is entitled, while ensuring the safety of the Court, counsel, the defendant and prospective jurors. I pray that your Honor will not allow counsel's otherwise ebullient disposition to mask the serious health risks attendant to in-person visiting at the MCC.

  The MCC's plan to open its doors to visitors when, according to the plaintiffs' latest submission in the case currently pending before the Hon. Edgardo Ramos, (20-cv-3315) the institution is facing new outbreaks of the virus, is unfathomable. Since May, when NYC's COVID numbers began to level off, the number of inmates who tested positive at MCC has increased over seven-fold, from 5 to 37.[1] As confirmed by MCC bulletins and inmate reports, at the time of their test results, many inmates were housed in at least five different units across the prison, including the open dormitories on 11 South that house as many as 156 inmates, now – aka 156 potential "super spreaders".

  MCC's record of protecting inmates and staff is less than stellar – and now, we are talking about decisions that could potentially have life and death consequences. The MCC has done very little to assure the Court – or anyone else – that it is safe to begin on-premises inmate visiting. Indeed, the MCC is unable to

---

 1 https://www.nyed.uscourts.gov/pub/bop/MDC_MCC_20200827_032723.pdf with (June 2, 2020), https://www.nyed.uscourts.gov/pub/bop/ MDC_MCC_20200603_013452.pdf.

offer any improvements by the BOP that have, in fact, provided a measure of safety to visitors or inmates.² Assuming that Andrews has not been exposed to the coronavirus – an assumption that may or may not be valid – as inmates who have tested positive are apparently being scattered throughout the MCC; this cannot be sufficient evidence that it is safe for counsel to even be consulting face-to-face with Mr. Andrews.

Indeed, counsel has repeatedly been informed by clients and colleagues that the MCC: (1) does no contact tracing; (2) has a 2-6 week "turn-around" for sick call visits; (3) has removed all soap and other cleaning supplies from housing units; (4) now requires inmates to purchase soap from the commissary, if they want to keep their units sanitary; (5) has failed to provide information regarding compliance with protocols like temperature checks, symptom screening, isolation, and quarantine; and, (6) has been unable to decide on a particular unit for inmates who must be quarantined; and; as a result, the virus has spread to inmates who have been exposed to the virus while housed in various units – mixing healthy individuals with potentially ill inmates. What seems abundantly clear is that MCC is giving little more than lip service to the protection of inmates at the institution – and inviting outsiders to come inside seems ill advised.

Inmates report that they are trying to keep their dormitories as clean as possible, but it is difficult because disinfectant is rationed. Further, they repeatedly report that they are only able to clean their sink and shower area ever few weeks, when soap and disinfectant are sparingly distributed. Indeed, inmates report that they are basically forced to buy soap from the commissary – which, many simply cannot afford. Still other inmates report that they have not had their temperature taken in weeks and no MCC staff has inquired about symptoms, or even one's general well-being.  Finally, the MCC's response time to inmate requests for medical attention can take days and even weeks.

Concern over the safety of trial participants has prompted courts in this district to express skepticism over whether trials can be held. Nothing in the MCC's approach to dealing safely with the virus to date, suggests that it is ready to safely welcome visitors back. Indeed, on the same day that this Court issued its Order announcing the commencement of Mr. Andrews' trial on October 20, 2020, the Hon. Victor Marrero issued an Order in *U.S. v. Eddie Cotto*, (18 Cr. 413)(VM) in which he

---

² Dozens of inmate declarations have been submitted to the Hon. Edgardo Ramos, in connection with the pending law suit against the MCC. These declarations have all been filed on ECF at 20-Cv-3315 (ER) and speak in great detail to the lack of any systematic approach toward keeping the MCC sanitary and safe in order to identify and slow the spread of the virus. One declaration stated: "I have not had my temperature taken in weeks and no MCC staff has asked me about my symptoms, or even my general well-being, recently.  The MCC is still very slow in responding to medical requests. We have to wait a long time after making a sick call request."

cites to the Chief Judge's standing order that SDNY trials shall remain suspended "until further order…"[3]

Further, regarding an October trial, Judge Marrero wrote:

> …the Court concludes that a jury trial in this case cannot reasonably be expected to proceed before December 2020. The trial currently scheduled to commence on October 19, 2020 shall be rescheduled to commence on December 7, 2020…

<u>Conclusion</u>

Counsel respectfully urges the Court to encourage the BOP and the US Marshal to find an appropriate venue in the courthouse where counsel and Mr. Andrews can meet and prepare for trial; again, assuming that he has not been exposed to the virus in his housing unit. Candidly, counsel can't imagine going to trial with a client with whom I may have met on a handful of occasions, but with whom I have not developed any sort of a relationship.

It is respectfully submitted that failing his release, for all of the foregoing reasons, his Sixth Amendment Right to a fair trial and to counsel requires a mechanism by which counsel can meet with Mr. Andrews without putting our safety at risk.

Your Honor's attention to this request is always appreciated.

Respectfully submitted,

/s/ Susan G. Kellman
Susan G. Kellman
Ezra Spilke
25 Eighth Avenue
Brooklyn, New York 11217
(718) 783-8200
sgk@kellmanesq.com

The Court shares defense counsel's concern. It would *of course* not be viable to condition Mr. Andrews' in-person trial preparation meetings with his counsel on such meetings occurring in a place in which counsel faces heightened exposure to COVID-19. The Court's order of September 3, 2020 necessarily contemplated that the twice-weekly meetings between Mr. Andrews and his counsel which the Court has ordered the BoP to accommodate take place in a venue that is assuredly safe for counsel. While the Court will not at this time dictate the location of such meetings, the Court expects the Justice Department, of which the BoP is a component, to find a safe venue for such meetings, and encourages the BoP to consider hosting them in one of the District's Manhattan courthouses. The Clerk of Court is requested to terminate the motion at Dkt. No. 453.

SO ORDERED.

9/8/2020

*Paul A. Engelmayer* (signature)

_____
PAUL A. ENGELMAYER
United States District Judge