# LAW OFFICES OF SUSAN G. KELLMAN
25 EIGHTH AVENUE • BROOKLYN, NEW YORK 11217
(718) 783-8200 • FAX (718) 783-8226 • SGK@KELLMANESQ.COM
FELLOW, AMERICAN COLLEGE OF TRIAL LAWYERS

October 16, 2020

**BY ECF**
The Honorable Paul A. Engelmayer
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

                Re: *United States v. Randall et al.,*
                   No. 19 Cr. 131 (PAE)

Dear Judge Engelmayer:

  At the outset of the pandemic, which was dominating headlines even then, the government's witness Chitra Raghavan flouted an order barring people from the courthouse if they were exhibiting certain symptoms, which included coughing. During her testimony, Dr. Raghavan's coughing fits were alarming. Perhaps sensing the unease of the trial participants, Dr. Raghavan offered a pretext – her allergy to dust and carpeting – was the reason for her coughing and she continued to testify – and cough. Emails that were later produced by the government revealed that Dr. Raghavan suspected that she had COVID-19 at the time of her testimony. In a letter motion filed under seal on September 25, 2020, the government asserts that this patently reckless and inexplicable conduct should be out of bounds on cross-examination.

  Proffer notes recently supplied by the government pursuant to the Jencks Act reflect that Dr. Raghavan blatantly violated the Southern District's Standing Order prohibiting people with specifically enumerated symptoms, including coughing, from entering the courthouse. It is clear that Dr. Raghavan misled the Court. Dr. Raghavan's noncompliance with the Court's order put the lives of the trial participants and the jurors in jeopardy. More than a fair inference can be drawn that Dr. Raghavan misled your Honor through counsel for the government and ultimately, the jury, while under oath.

  On March 9, 2020, at the outset of the COVID-19 pandemic, Chief Judge McMahon issued a Revised Standing Order prohibiting certain categories of people from entering any courthouse in the Southern District of New York. One of those categories was comprised of "[p]ersons with fever, cough or shortness of breath." *In Re Restrictions on Visitors to Courthouses*, M10-468 (Mar. 9, 2020), attached hereto as Exhibit A. On March 11, a student at John Jay College – where Dr. Raghavan teaches – tested positive for COVID-19, causing the school to close its doors. Letter from Karol V. Mason, President of John Jay College (Mar. 10, 2020), attached as Exhibit B.

  On the morning of March 11, before the commencement of the trial day, the defense emailed the government, attaching the letter from John Jay's President Karol V. Mason and the Revised Standing Order, and asked them to confirm that Dr. Raghavan had no contact with the infected student and that her entry into the courthouse would not violate the Revised Standing Order.

That morning, out of the presence of the jury and before Dr. Raghavan took the stand, the defense raised the issue of the infection at John Jay, and your Honor asked the government what steps it had taken to confirm that Dr. Raghavan could properly enter the courthouse. (Trial Tr. at 284-85). The following discussion ensued:

> MS. BHASKARAN: So as soon as we heard about that from defense counsel, I called Dr. Raghavan. She has confirmed that she has had no known contact with the afflicted student and in fact the afflicted student is not her own student.
>
> THE COURT: She has not been directed to be self-quarantined, and there is nothing factually you know about her that puts her in any --
>
> MS. BHASKARAN: That's right. She also explained to me that John Jay College has been calling individuals who may have had exposure, and she has not received such a call. Out of an abundance of caution -- she is on her way here today – I have asked her to stay outside of the courtroom until this scenario.

(*Id.* at 285). A discussion about a curative remark to the jury followed, during which government counsel stated: "Your Honor, another suggestion might be just a reference to the fact that Judge McMahon has issued a standing order; the parties are aware of that standing order; and as far as we know, no one who is affected by the order will be coming into the courtroom." (*Id.* at 287).

Dr. Raghavan took the stand that same day – March 11 – and her testimony continued into March 12. During her testimony, Dr. Raghavan fell into what can only be described as "fits" of coughing. Clearly cognizant that her coughing was quite noticeable, she explained, while under oath and without being prompted by the government, her apparently uncontrolled coughing, as follows:

> I want to say a quick aside. I might cough. It's because I'm allergic to dust, and where there's carpets, there's dust; so that no one gets alarmed. I'm also somewhat allergic to Purell and Detrol, and right, it's everywhere. So it's sort of lose-lose; so I'm going to be coughing every now and then, but it's the dust mostly.

(Trial Tr. at 570; *see also id.* at 573 ("I'm going to have a sip of water. If I close my mouth to cough, I cough more because there's disinfectant all over my hand. If I don't, I'm rude.").

Although the witness's fits of coughing in a cramped courtroom, at the precipice of a pandemic were alarming, there was no reason to doubt Dr. Raghavan's explanation that her coughing was caused by allergies. However, on April 17, Dr. Raghavan emailed the government stating: "I probably had COVID-19, was sick March 13-18 or so, but who knows? Perhaps flu, perhaps allergy—all guesses welcome."[1]

As an initial matter, the government is patently incorrect that Dr. Raghavan did not have a cough when she was in the courthouse, indeed on the stand. (Gov't Letter at 2). Next,

---

[1] The emails were produced as supplemental Jencks Act material last week and are attached under seal as Exhibit C.

if Dr. Raghavan had *any* reason to believe that she was infected with the novel coronavirus – and was experiencing symptoms – her appearance on March 11 and 12 not only violated the Chief Judge's order – but was, at the very least – reckless. One may excuse Dr. Raghavan by arguing that she did not have the benefit of hindsight, but that would not be accurate. As of March 3 – eight days before she testified – the mortality rate of those infected with the novel coronavirus was thought to be high.[2] On March 11, the first day of her testimony, the W.H.O. declared COVID-19 a pandemic.[3] Indeed, that very same day, her own school closed its doors because of a single infection. A reasonable person would have known that misleading the Court about her suspicion that she was infected with COVID-19 was reckless; and if her motivation to lie to – or at the very least – mislead the government, the officers at the front entrance to the courthouse and ultimately your Honor and the jury, was to earn a fee of $30,000 – this is more than fertile grounds for cross examination.

A fair inference can be drawn, given Dr. Raghavan's April 17 email and her fits of coughing while in the witness box, that Dr. Raghavan deliberately misled the Court, thereby endangering the lives of all of the trial participants. The defense has a right to cross-examine Dr. Raghavan regarding her belief that she had COVID-19 when she testified, including probing into her possibly pre-textual explanation that her coughing fits were due to dust or carpeting.

Critically, it took very little effort to confirm that Dr. Raghavan's "allergy" explanation was pure pretext. The government provided transcripts of Dr. Raghavan's previous testimony, including on December 11, 2019, in a jury trial before the Honorable Timothy Mazzei in Riverhead, New York. Our recent inquiry of courthouse staff in Riverhead has confirmed that Judge Mazzei's courtroom is also carpeted. Despite the carpeting, the record does not reflect that Dr. Raghavan was coughing due to allergies or anything else. The defense is prepared to subpoena a witness who will testify to the carpeting in Judge Mazzei's courtroom. Additionally, the building in which Dr. Raghavan's office is located at John Jay College is also carpeted.

The government's investigation of this matter extended no further than merely asking Dr. Raghavan to explain her coughing at trial in light of her April 17 email, thus calling into question the candor of both government counsel and Dr. Raghavan. If any additional *Giglio* material relating to this matter exists, we ask that your Honor direct that it be provided to counsel forthwith. Absent anything further, we respectfully submit that it is perfectly proper for the Court to permit cross examination of Dr. Raghavan on this matter.

        Respectfully submitted,

         /s/ SGK
        Susan G. Kellman
        Ezra Spilke
        *Counsel for Carl Andrews*

---

[2] Richard Read *et al.*, *Coronavirus deaths in U.S. increase; official warns of many more cases*, L.A. Times (Mar. 3, 2020), https://www.latimes.com/california/story/2020-03-03/six-dead-coronavirus-kirkland-seattle-california-cases.

[3] Jamie Gumbrecht and Jacqueline Howard, *WHO declares novel coronavirus outbreak a pandemic*, CNN (Mar. 11, 2020), https://www.cnn.com/2020/03/11/health/coronavirus-pandemic-world-health-organization/index.html.

cc: All counsel of record by ECF